UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20589-MIDDLEBROOKS/TORRES

UNITED STATES OF AMERICA

vs.

GEORGE SEMERENE,

            Defendant.
_____/



COURT EXHIBIT
CASE NO. 21-20589-CR-MIDDLEBROOKS
EXHIBIT NO. B

## FACTUAL PROFFER

The United States of America and George Semerene (the "Defendant"), personally and through his attorney, agree that the following statements are true and accurate and serve as the factual basis for the Defendant to enter a plea of guilty, all of which occurred in the Southern District of Florida and elsewhere, and could have been proven beyond a reasonable doubt if this case went to trial:

On March 8, 2015, pursuant to International Emergency Economic Powers Act ("IEEPA") and other statutes, the President of the United States issued Executive Order 13692, entitled, "Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Venezuela," declaring a national emergency with respect to the threat to the national security, foreign policy, and economy of the United States posed by the situation in Venezuela, including the Government of Venezuela's erosion of human rights guarantees, persecution of political opponents, curtailment of press freedoms, use of violence and human rights abuses in response to antigovernment protests, and arbitrary arrest and detention of antigovernment protesters, as well as the exacerbating presence of significant public corruption.

Executive Order 13692, Section 1, states, among other things, "[a]ll property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." It then goes on to provide a list of criteria for the Secretary of the Treasury to identify and designate individuals and entities pursuant to the Executive Order, whose assets will be blocked.

Executive Order 13692, Section 4, further states that "[t]he prohibitions in section 1 of this order include but are not limited to:

a. the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and

b. the receipt of any contribution or provision of funds, goods, or services from any such person.

On November 1, 2018, pursuant to IEPPA and other statutes, the President of the United States issued Executive Order 13850, entitled "Blocking Property of Additional Persons Contributing to the Situation in Venezuela," which took additional steps with respect to the national emergency declared in Executive Order 13692. Specifically, it provided additional criteria for the Secretary of the Treasury to identify and designate individuals and entities whose assets would be blocked.

On January 28, 2019, the Department of Treasury's Office of Foreign Assets Control ("OFAC") designated Petroleos de Venezuela, S.A. ("PdVSA") pursuant to Executive Order 13850 for operating in the oil sector of the Venezuelan economy.

Pursuant to Executive Order 13692 and its progeny, including Executive Order 13850,

2

OFAC administers and enforces the Venezuela Sanctions Regulations, 31 C.F.R. part 591. Executive Orders 13693, 13850 and 31 C.F.R. 591.201 generally prohibited, without a license, the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked. Accordingly, starting on January 28, 2019, a license from OFAC was required to conduct transactions with, or export goods to PdVSA.

From January 28, 2019, the Defendant, in his role as a PdVSA employee, conspired with others to knowingly circumvent U.S. sanctions to obtain aircraft parts for PdVSA's aircraft fleet. Specifically, the Defendant and his co-conspirators at PdVSA conspired with individuals at NOVAX S.A., a Costa Rican company, and Aerofalcon S.L., a Spanish company, to mask that aircraft parts purchased in the United States were destined for PdVSA. The co-conspirators: (1) lied to the U.S. parts suppliers; (2) made false declarations on customs forms and shipping documents; (3) fabricated supplier invoices; (4) provided false end-user certificates; and (5) shipped aircraft parts through third countries to make their true destination.

The Defendant's involvement in these efforts to circumvent U.S. sanctions were done knowing that the U.S. sanctions existed. For example, on March 27, 2019, and April 5, 2019, the Defendant sent emails to his colleagues and supervisor at PdVSA which contained purchase requisition forms for various aircraft parts. The April 2019 email pertained to three aircraft, a Dassault Falcon 2000, tail number YV3360, a Learjet 45, tail number YV2734, and a Beech 1900, tail number YV2763. Importantly, the purchase requisition forms specifically discussed the U.S. sanctions that were in place and that PdVSA would be forced to obtain quotes from companies operating outside the United States.

Thereafter, the Defendant and his co-conspirators worked with representatives from

3

NOVAX S.A. and Aerofalcon S.L. to secure aircraft parts from the United States by leveraging NOVAX's location in Costa Rica and Aerofalcon's location in Spain. The conspirators agreed that NOVAX would purchase parts from the United States on behalf of PdVSA and thereafter smuggle the parts through Costa Rica, ultimately delivering them to PdVSA. In order to effectuate this plan, the co-conspirators discussed NOVAX setting up bank accounts in third countries such as Russia, China, or Malaysia, to ensure that the payments would be processed, and to avoid scrutiny associated with bank accounts in the United States and Europe. Further, the co-conspirators agreed that it was of paramount importance that PdVSA not appear on any paperwork, in order to ensure that the banks would carry out the payments.

**Purchase of U.S. Bearings and Rudder Parts through NOVAX (Indictment ¶¶ 19-23)**

The Defendant participated in the purchase of bearings and rudder parts from the United States, through NOVAX employees, in November 2019. To do so, NOVAX co-defendants Luis Duque, Melvin Aleman, and Pedro Sucre, arranged to purchase the bearings and rudder parts from two U.S.-based companies. In doing so, Luis Duque, Melvin Aleman, and Pedro Sucre hid from the U.S. parts suppliers that the parts were intended for PdVSA and rather indicated that they were for NOVAX in Costa Rica. The two U.S. parts suppliers sold the parts to NOVAX, who thereafter supplied them to PdVSA pursuant to a NOVAX/PdVSA purchase order dated November 28, 2019, and shared via email amongst the Defendant and co-defendants Gilberto Araujo, Guillermo Marval, Fernando Blequett, Luis Duque, Melvin Aleman, Mikhail Largin, and Pedro Sucre.

**Purchase of U.S. Joint Slide Flexes through NOVAX**

The Defendant also participated in the purchase of three joint slide flexes from the United States, through NOVAX employees, in December 2019. Specifically, NOVAX employees purchased three joint slide flexes from a U.S. parts supplier in December 2019. The co-

conspirators then agreed that co-defendant Mikhail Largin was going to "take [the joint slide flexes] in his suitcase to Caracas" and shared a fabricated invoice for co-defendant Largin to use at Venezuelan customs. Thereafter, on February 3, 2020, the Defendant received a Federal Aviation Administration Form 8730, showing that one of the joint slide flexes was certified for airworthiness in the United States on January 7, 2020, indicating that the joint slide flex was from the United States.

### Purchase of U.S. Actuator through Aerofalcon

The Defendant also worked to procure a Learjet 45 actuator (Part No. 6627401000-009) from the United States through Aerofalcon S.L. located in Spain. On November 20, 2019, the Defendant sent an email to his co-defendants, including Gilberto Araujo, Guillermo Marval, and Fernando Blequett, discussing the purchase of a Learjet 45 actuator. Aerofalcon subsequently purchased a Learjet 45 actuator from a U.S.-based parts supplier, indicating that Aerofalcon in Spain was the part's ultimate destination. However, on December 10, 2019, co-defendant Guillermo Marval sent an email to the Defendant and Fernando Blequett, among others, indicating that the actuator was "incoming" and included a Federal Aviation Administration Form 8730, showing that the actuator was certified for airworthiness in the United States on November 15, 2019, indicating that the joint slide flex was from the United States.

### Urgent Request for Parts following OFAC Designation

On or about January 21, 2020, the U.S. Department of the Treasury announced sanctions against several specific PdVSA aircraft, including YV3360, YV2486, YV2565, YV2567, YV1118, YV2734, YV2716, YV2763, YV2762, and YV2869. Three days later, on January 24, 2020, the Defendant forwarded to Fernando Blequett an urgent request for parts related to each of these aircraft despite their OFAC designation.

Based upon the foregoing facts, which establish all the elements of Count 1 of the Indictment, and to which the Defendant is pleading guilty, the Government would prove the Defendant's guilt at trial.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/20/24

_____
JONATHAN D. STRATTON
ASSISTANT UNITED STATES ATTORNEY

Date: 8/20/24

_____ for:
AHMED ALMUDALLAL
TRIAL ATTORNEY
NATIONAL SECURITY DIVISION

Date: 8/20/24

_____
GEORGE SEMERENE
DEFENDANT

Date: 8/20/24

_____
KATE TAYLOR
ASSISTANT FEDERAL PUBLIC DEFENDER

6